**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith D. Erickson, individually and as trustee of the Erickson Family Trust, <br><br> Plaintiff, <br><br> v. <br><br> Green Tree Servicing LLC; Countrywide Home Loans, Inc.; Bank of America, N.A.; Federal National Mortgage Association; Mortgage Electronic Registration Systems, Inc., <br><br> Defendants. | No. CV-14-08089-PCT-NVW <br><br> **ORDER** |

Before the Court are Green Tree, Fannie Mae, and MERS' Motion to Dismiss First Amended Complaint (Doc. 53) and the Motion to Dismiss First Amended Complaint by Defendants Countrywide Home Loans, Inc., and Bank of America, N.A., and Joinder in Defendants Green Tree Servicing LLC, Federal National Mortgage Association and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 60). The Court has considered the parties' motions, responses, replies, supplemental briefing, and oral argument.

**I.     RULE 12(b)(6) LEGAL STANDARD**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal

theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, a court may consider evidence on which the complaint necessarily relies if (1) the complaint refers to the document, (2) the document is central to the plaintiff's claim, and (3) no party questions the authenticity of the copy of the document submitted to the court. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The First Amended Complaint (Doc. 49) refers to exhibits attached to the initial complaint (Doc. 1-1), which are central to Plaintiff's claims, and no party questions the authenticity of Plaintiff's exhibits. Therefore, the Court considers the exhibits attached to the initial complaint (Doc. 1-1) in deciding the present Rule 12(b)(6) motions, but does not consider exhibits Defendants submitted in its supplemental briefing that were unavailable to Plaintiff when she filed the First Amended Complaint.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts should consider five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id.* Leave to amend should be granted if the complaint's deficiencies can be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading.

*United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Dismissal without leave to amend is proper if the complaint cannot be cured by any amendment. *Id.*

## II. FACTUAL ALLEGATIONS ASSUMED TO BE TRUE

The following facts are assumed to be true for the purpose of deciding the motions to dismiss the First Amended Complaint. The Court makes no determination of whether they are in fact true. The Court does not assume to be true legal conclusions or conclusory factual allegations, such as assertions that an assignment is void and a person lacks authority.

On June 24, 2006, Plaintiff entered into a home loan agreement with Countrywide Home Loans, Inc. ("Countrywide"), executing a Note in the amount of $338,000, which was secured by a Deed of Trust. The Deed of Trust states: "'Lender' is Countrywide Home Loans, Inc." (Doc. 1-1 at 53.) It also states:

> "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(*Id.* at 54 (emphasis in original).) The Deed of Trust further states:

> TRANSFER OF RIGHTS IN THE PROPERTY
> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . . .

(*Id.* at 54-55.) The Deed of Trust defines "Security Instrument" as "this document" "together with all Riders to this document." (*Id.* at 53.) At closing, Plaintiff received a separate document titled "Disclosure Statement About MERS" that stated MERS is a company separate from the Lender (*i.e.*, Countrywide), the Lender "has elected to name

- 3 -

MERS as the mortgagee in a nominee capacity," and that doing so does not affect Plaintiff's obligation to the Lender. (*Id.* at 70.)

The Deed of Trust states that the Note can be sold one or more times without prior notice to the Borrower. (*Id.* at 61.) It does not require that the Borrower ever be notified regarding transfers of beneficial interest in the Note.

The Deed of Trust defines "Loan Servicer" as the entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." (*Id.*) It states that there might be one or more changes of the Loan Servicer, related or unrelated to a sale of the Note, and if there is a change of the Loan Servicer, Borrower will be given written notice of the change with the name and address of the new Loan Servicer. (*Id.*) Further, the Deed of Trust authorizes Lender to remove the Trustee and appoint a successor trustee at any time and for any reason. (*Id.* at 62.)

In January 2008, Bank of America, N.A. ("BANA") acquired Countrywide. By letter dated November 22, 2011, Green Tree Servicing LLC ("Green Tree") notified Plaintiff that BANA was transferring servicing of her loan to Green Tree, effective December 1, 2011. (*Id.* at 76-79.) The letter stated, "The servicing transfer does not affect any terms or condition of your current mortgage loan, other than the terms directly related to the servicing of your loan." (*Id.* at 76.) The letter did not state that Green Tree was or was not the beneficiary of the Deed of Trust securing Plaintiff's debt. In letters dated February 11 and 15, 2013, regarding the availability of homeownership counseling, Green Tree again identified itself as the servicer for Plaintiff's loan and did not claim or disclaim being the creditor or beneficiary, but it did state, "You are not released from your obligation to Green Tree." (*Id.* at 81-84.)

On February 18, 2013, Green Tree sent Plaintiff a letter titled "Notice of Default and Right to Cure Default." (*Id.* at 86.) It identified Green Tree as the creditor for Plaintiff's loan. It stated Plaintiff failed to submit monthly payments due 1/1/2013

through 2/1/13 and could cure her default within 30 days by paying $3,331.89 or by completing a modification or repayment arrangement through Green Tree.

On March 8, 2013, Ashley Braband, identified as assistant secretary for MERS as nominee for Countrywide, its successors and assigns, executed a Corporate Assignment of Deed of Trust, assigning from MERS, as nominee for Countrywide, to Green Tree "the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon." (*Id.* at 106.) Braband is an employee of Nationwide Title Clearing, a document preparation service located in Pinellas County, Florida, and not an employee of MERS or an officer of Nationwide Title Clearing.

On May 13, 2013, Green Tree sent Plaintiff a letter titled "Notice of Default and Right to Cure Default," which identified Green Tree as the creditor for Plaintiff's loan. (*Id.* at 87.) It stated Plaintiff failed to submit monthly payments due 4/1/2013 through 5/1/13 and could cure her default within 30 days by paying $3,307.58 or by completing a modification or repayment arrangement through Green Tree. By letter dated November 19, 2013, Green Tree notified Plaintiff that her account had been referred to an attorney to initiate foreclosure action against her property. (*Id.* at 89.)

On December 3, 2013, Lori Hennessey, Foreclosure Supervisor for Green Tree, signed a Notice of Substitution of Trustee, appointing Jason P. Sherman as the successor trustee under the Deed of Trust. (*Id.* at 108.) On February 7, 2014, the Notice of Substitution of Trustee and a Notice of Trustee's Sale were recorded in Yavapai County, Arizona. (*Id.* at 108, 110.) The Notice of Trustee's Sale, signed by Jason P. Sherman as trustee, identified Green Tree as the beneficiary. A Statement of Breach, Notice of Default and Election to Sell Under Deed of Trust, signed by Jason P. Sherman as trustee and dated February 7, 2014, also identified Green Tree as the beneficiary and described Plaintiff's breach as failure to make payments due beginning September 1, 2013. It further stated that Green Tree "requires immediate payment in full of all sums secured by the Deed of Trust and further elects to sell the subject property." (*Id.* at 113-14.) As of

April 2014, MERS identified Green Tree as the servicer of Plaintiff's loan and Federal National Mortgage Association ("Fannie Mae") as the Investor. (*Id.* at 72.)

Although Plaintiff "does not admit any default, and in fact refuses to confirm the debt at this stage in the proceedings," she does not allege that she made all loan payments when they were due under the Note and Deed of Trust or under any loan modification agreement. (Doc. 72 at 10.) She also does not allege that alleged defects in the documents prevented her from making timely payments.

On June 1, 2015, Jason P. Sherman, as trustee for the Deed of Trust, canceled the sale described in the Notice of Trustee's Sale recorded on February 7, 2014, and recorded notice of the cancellation in the office of the County Recorder of Yavapai County, State of Arizona. (Doc. 89.) The notice of cancellation does not cancel the Statement of Breach, Notice of Default and Election to Sell Under Deed of Trust, signed by Jason P. Sherman as trustee and dated February 7, 2014.

## III. THE ARIZONA DEED OF TRUST ACT

### A. Origins and Purposes

Before 1971, the contractual instrument known as a "deed of trust" was treated as a mortgage and could be foreclosed only by judicial action, followed by a six-month redemption period. *M & I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 861 (D. Ariz. 2011) (citing Gary E. Lawyer, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 Ariz. L. Rev. 194, 194-95 (1973)). In 1971, the Arizona "legislature created the deed of trust, under which there is no right of redemption and foreclosure occurs outside of the judicial process through a trustee's sale," to avoid the more time-consuming and expensive mortgage foreclosure process. *In re Vasquez*, 228 Ariz. 357, 359 n.1, 266 P.3d 1053, 1055 n.1 (2011). The Deed of Trust Act recognized for the first time the deed of trust as a real property security device distinct from a mortgage, set forth detailed provisions governing formation and administration of trust deeds, and introduced procedures markedly different from those governing mortgages.

The Act also preserved the trust deed beneficiary's option to foreclose judicially in compliance with the statutes regulating mortgage foreclosures. A.R.S. § 33-807(A).

One of the most notable differences under the Deed of Trust Act was recognition of the "power of sale." This power permits the trust deed beneficiary to cause the trust property to be sold and to apply the proceeds of that sale to a defaulted loan, without going to court. Unlike mortgage foreclosures, which begin with the filing of a lawsuit, a sale under the power of sale begins when a trustee (appointed by the beneficiary) files a notice of trustee's sale giving the defaulting borrower 90 days to cure the default. If the borrower does not do so, and if the trustee complies with all of the Act's requirements, then the trustee can auction the property. The borrower has no right of redemption after such a sale, and the successful bidder is entitled to immediate possession. If the beneficiary and trustee follow statutorily required procedures, the Deed of Trust Act eliminates the need for judicial proceedings before conducting a trustee's sale of the property securing the trust deed.

Because the Arizona Deed of Trust statutes "strip borrowers of many of the protections available under a mortgage, . . . lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower." *Patton v. First Federal Sav. & Loan Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978); *accord In re Krohn*, 203 Ariz. 205, 208, 52 P.3d 774, 777 (2002).

### B.   Statutory Requirements for Non-Judicial Foreclosure

Under the Deed of Trust Act, a "trust deed" or "deed of trust" means a deed conveying property to a trustee to secure the performance of a contract. A.R.S. § 33-801(8). The statutory definition of "Contract" includes, but is not limited to, "a note, a promissory note or provisions of any trust deed." A.R.S. § 33-801(4). "'Trustor' means the person conveying trust property by a trust deed as security for the performance of a contract or contracts, or the successor in interest of such person." A.R.S. § 33-801(11). "'Beneficiary' means the person named or otherwise designated in a trust

deed as the person for whose benefit a trust deed is given, or the person's successor in interest." A.R.S. § 33-801(1).

"Trustee" is defined as the individual or entity, or the successor in interest, "to whom trust property is conveyed by a trust deed." A.R.S. § 33-801(10). At any time, the beneficiary may appoint a successor trustee, and the appointment constitutes a substitution of trustee. A.R.S. § 33-804(A), (B). At the time of the substitution, a notice of substitution of trustee must be recorded, and the beneficiary must give written notice to the trustor. A.R.S. § 33-804(C). "By virtue of his position, a power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold . . . after a breach or default of the trust deed." A.R.S. § 33-807(A). The power of sale may not be exercised before the ninety-first day after the date of the recording of the notice of the sale. A.R.S. § 33-807(D). The notice of sale must include the names and addresses of the beneficiary and the trustee, the telephone number of the trustee, the name and address of the original trustor as stated in the deed of trustee, and the signature of the trustee, among other things. A.R.S. § 33-808(C). "The address of the beneficiary shall not be in care of the trustee." *Id.*

Within five business days after recording the notice of sale, the trustee must mail by certified or registered mail, a copy of the notice of sale to each of the persons who were parties to the trust deed. A.R.S. § 33-809(C). The notice to each party must include an additional notice stating that a breach of the trust deed or the contract secured by the trust deed has occurred, setting forth the nature of the breach, and stating the beneficiary's election to sell or cause to be sold the trust property under the trust deed. *Id.* The additional notice must be signed by the beneficiary or the beneficiary's agent. *Id.* The trustee must set forth the unpaid principal balance. *Hogan v. Wash. Mut. Bank, N.A.*, 230 Ariz. 584, 586, 277 P.3d 781, 783 (2012).

Transfer of a debt evidenced by a promissory note and secured by a trust deed transfers beneficial interest in the trust deed by operation of law: "The transfer of any

contract or contracts secured by a trust deed shall operate as a transfer of the security for such contract or contracts." A.R.S. § 33-817; *see Vasquez*, 228 Ariz. at 359, 266 P.3d at 1055 (when the note was assigned, the trust deed was transferred by operation of law).

But assignment of a trust deed without assignment of the debt it secures does not convey beneficial interest:

> The law seems to be well settled that the mortgage is a mere incident to the debt and that its transfer or assignment does not transfer or assign the debt or the note. The mortgage goes with the note. If the latter is transferred or assigned, the mortgage automatically goes along with the assignment or transfer. . . . The mortgage, being a mere incident of the debt, cannot be assigned separately from it, so as to give any beneficial interest. . . . A mortgage, as distinct from the debt it secures, is not a thing of value nor a fit subject of transfer; hence an assignment of the mortgage alone, without the debt, is nugatory, and confers no rights whatever upon the assignee. . . . An assignment of the note carries the mortgage with it, while the assignment of the latter alone is a nullity.

*Hill v. Favour*, 52 Ariz. 561, 568, 84 P.2d 575, 578 (1938); *accord Rodney v. Arizona Bank*, 172 Ariz. 221, 223, 836 P.2d 434, 436 (Ct. App. 1992).

Arizona statutes do not require that an assignment of a trust deed be recorded before recording the notice of trustee's sale. *Vasquez*, 228 Ariz. at 359, 266 P.3d at 1055. Because the notice of sale must identify the current beneficiary of the trust deed, the obligor will receive notice of the beneficiary's identity before the scheduled sale. *Id.* at 360, 266 P.3d at 1056.

Arizona statutes do not require the beneficiary to show possession of or otherwise document its right to enforce the underlying note before a trustee may exercise the power of sale. *Hogan*, 230 Ariz. at 586, 277 P.3d at 783. "Absent an affirmative allegation by the borrower that the trustee or beneficiary is not, in fact, the 'true' trustee/beneficiary, the trustee or beneficiary may conduct a trustee's sale without having to demonstrate his authority to foreclose." *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125, 136, 318 P.3d 419, 430 (Ct. App. 2014), *review denied* Sept. 23, 2014. However, "if a borrower is in default and possesses a good faith basis to dispute the authority of an entity

- 9 -

to conduct a trustee's sale, the borrower should not be prohibited from challenging its authority simply because such action may slow down the foreclosure process." *Id.*

During the recent recession, many Arizona homeowners fell behind on their mortgage obligations and sought to avoid losing their homes in trustee's sales by filing state court actions. Many of those lawsuits were removed to the federal court. As a result, some of the legal issues presented in this case, although common, have not been decided by the Arizona state courts. At the pleading stage, those issues are not decided here with finality. It is necessary only to determine whether, assuming Plaintiff's factual allegations to be true and construing them in the light most favorable to Plaintiff, Plaintiff "possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale."

## IV. ANALYSIS

### A. Plaintiff's Claims

The First Amended Complaint alleges five counts: (1) declaratory judgment regarding contract rights of the parties, assignment of the deed of trust, substitution of the trustee, and notice of trustee's sale; (2) breach of contract (the Note and Deed of Trust); (3) breach of the duty of good faith and fair dealing; (4) quiet title under A.R.S. § 33-420; and (5) negligence per se. (Doc. 49.) Plaintiff asserts that she has a good faith basis to dispute Green Tree's authority as the Note holder and beneficiary of the Deed of Trust, or agent of the Note holder and beneficiary of the Deed of Trust, to issue a notice of default on May 13, 2013, and record a notice of substitution of trustee on December 3, 2013. If Green Tree lacked such authority, the trustee appointed by Green Tree lacks authority to conduct a trustee's sale.

### B. Green Tree's Authority

The First Amended Complaint alleges that Green Tree did not receive from MERS authority to issue notice of default to Plaintiff, appoint Jason P. Sherman as the successor trustee under the Deed of Trust, or direct the trustee to send a notice of trustee sale

because MERS was not the beneficiary of the Deed of Trust and not the holder of the Note secured by the Deed of Trust.

The Deed of Trust identifies MERS as the beneficiary and also states that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns." It does not define "nominee" or explain what acting "solely" as a nominee means. If the parties were able to confer beneficiary status on MERS by executing the Deed of Trust, then by executing the Corporate Assignment of the Deed of Trust, MERS transferred beneficial interest in the Deed of Trust to Green Tree. Under this view, Green Tree had authority to issue notice of default to Plaintiff and to appoint Jason P. Sherman as the successor trustee under the Deed of Trust, and Sherman had authority to commence non-judicial foreclosure proceedings under the Arizona Deed of Trust statutes.

But the Arizona Deed of Trust statutes define "beneficiary" as "the person for whose benefit a trust deed is given." It is undisputed that MERS never was "the person for whose benefit a trust deed is given." Because non-judicial foreclosure is permitted only in strict compliance with the statutes, it is unlikely that the parties' agreement may override the statutory definition of "beneficiary." If MERS was not the beneficiary, it could not assign beneficial interest to Green Tree. Therefore, Green Tree likely did not receive authority from MERS to issue notice of default to Plaintiff and to appoint Sherman as the successor trustee under the Deed of Trust to commence non-judicial foreclosure proceedings under the Arizona Deed of Trust statutes.

Another theory is that "nominee" is the equivalent of "agent," and as agent of the beneficiary, *i.e.*, Countrywide/BANA, MERS had authority to assign beneficial interest to Green Tree, which then properly exercised its authority to issue notice of default to Plaintiff and to appoint Sherman as the successor trustee under the Deed of Trust. However, "generally the agent must be acting under the control of the principal and for the principal's benefit." *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 88, 118 P.3d 29, 36 (Ct. App. 2005). The Corporate Assignment of Deed of Trust represents that Ashley

Braband, "as Asst. Secretary for Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., its successors and assigns," assigned the Deed of Trust to Green Tree.  The First Amended Complaint alleges that Ashley Braband was an employee of Nationwide Title Clearing, a document preparation service, and lacked authority to execute the assignment on behalf of MERS.  But even if she had authority to represent MERS, the Corporate Assignment of Deed of Trust provides no evidence that Ashley Braband was acting under the control of Countrywide/BANA.

A third theory is that whatever role MERS played in holding the Deed of Trust as the nominee for Countrywide and its successors and assigns is irrelevant to Green Tree's authority if Green Tree was the Note holder at the time it issued the notice of default and the notice of substitution of trustee.  Under Arizona law, the transfer of a contract secured by a trust deed operates as a transfer of the trust deed.  A.R.S. § 33-817.  If Countrywide transferred the Note, secured by the Deed of Trust, to Green Tree, then the Deed of Trust transferred by operation of law to Green Tree.  Under this theory, Green Tree would have been the beneficiary of the Deed of Trust as defined by the Arizona Deed of Trust statutes and authorized to issue the notice of default and the notice of substitution of trustee while it was the holder of the Note.  Identifying Green Tree as the creditor and beneficiary in the Notice of Default and Right to Cure Default, Notice of Substitution of Trustee, Notice of Trustee's Sale, and Statement of Breach then would have been accurate.

However, this theory works only if Countrywide transferred the Note to Green Tree, its loan servicer, before Green Tree issued the notices.  These notices do not state that Green Tree is acting as agent for the beneficiary and Note holder, but rather that Green Tree *is* the creditor, *i.e.*, beneficiary and Note holder.  Having no reason to think that a loan servicer became a lender, Plaintiff had a good faith basis to question Green Tree's status as the beneficiary of the Deed of Trust and holder of the Note.  Moreover, had Plaintiff not filed an action to enjoin the trustee's sale, she risked waiving "all

- 12 -

defenses and objections to the sale" under A.R.S. § 33-811(C). Therefore, Plaintiff possessed "a good faith basis to dispute the authority of an entity to conduct a trustee's sale." *See Steinberger*, 234 Ariz. at 136, 318 P.3d at 430. But the only entity that has claimed authority to conduct a trustee's sale is Green Tree.

### C. Claims to Be Dismissed

Count One of the First Amended Complaint seeks declaratory judgment of the following: the Corporate Assignment of Deed of Trust, Notice of Substitution of Trustee, and Notice of Default are void; the void recorded documents must be cancelled by recordings at the Yavapai County Recorder's Office; only the holder of the Note may enforce the terms of the Note and accelerate the balance; only the holder of the Note is protected by the Deed of Trust as security; and only the holder of the Note may initiate foreclosure of the Deed of Trust. As found above, Plaintiff has a good faith basis to seek declaratory judgment regarding Green Tree's claimed authority to enforce the terms of the Note and accelerate the balance, issue notice of default, and issue notice of substitution of trustee.

Count One also seeks declaratory judgment that "no party may notice or re-notice a trustee's sale without proving status as Note Holder/Lender and true beneficiary under the Note and Deed of Trust, and otherwise complying with the contracts." Under current Arizona law, a beneficiary is not required to prove its status as Note Holder/Lender before a trustee may exercise the power of sale, but a defaulting borrower with a good faith basis to dispute the authority of an entity to conduct a trustee's sale may bring a lawsuit to do so. *Hogan*, 230 Ariz. at 586, 277 P.3d at 783; *Steinberger*, 234 Ariz. at 136, 318 P.3d at 430. In other words, after notice of a trustee's sale is given, the burden is on the borrower to plead a good faith basis that the trustee lacks authority to conduct the sale before the purported creditor is required to prove it holds the Note.

Count Two fails to state a claim for breach of contract. It alleges that "Defendants have breached their contracts" with Plaintiff by issuing the notice of default, substitution

- 13 -

of trustee, and the trustee sale, and that all of the Defendants are bound in contractual privity. As alleged, Countrywide is the only Defendant that executed a contract with Plaintiff, Green Tree is not Countrywide's successor to the contract, and Green Tree is the only Defendant that issued the notices of default and substitution of trustee. As alleged, none of the other Defendants can be bound in contractual privity with Countrywide, and none are liable for Green Tree's actions. Moreover, Count Two does not allege any facts regarding how the alleged breach of contract caused Plaintiff harm beyond that caused by her loan default.

For the same reasons, Count Three fails to state a claim for breach of the duty of good faith and fair dealing, which arises from a contractual relationship. As alleged, only Countrywide (and subsequently BANA) had any contractual obligations to Plaintiff, and the other Defendants were not agents of Countrywide. Moreover, Countrywide did not hide the identity of the true beneficiary and Note Holder/Lender or masquerade as the party entitled to declare a default, accelerate the balance, and take action to foreclose; and Countrywide did not "allow" another entity to declare a default, accelerate the debt, and initiate a foreclosure.

Count Four partially duplicates Count One, seeking a declaration that the recorded Corporate Assignment of Deed of Trust, Notice of Substitution of Trustee, and Notice of Default are null and void. To the extent that Count Four alleges the recorded documents are invalid and seeks to clear title under A.R.S. § 33-420, it states a claim upon which relief can be granted.

Count Five alleges negligence per se based on conclusory allegations of statutory violations by Green Tree and MERS, but fails to allege supporting facts. Further, it duplicates portions of Count Four. During oral argument, Plaintiff's counsel indicated that Plaintiff would like opportunity to amend Count Five, and leave to do so with respect to only Green Tree will be granted.

Therefore, Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing, *i.e.*, Counts Two and Three, will be dismissed with prejudice. Plaintiff's claim for negligence per se, Count Five, will be dismissed with leave to amend, but only against Green Tree.

### D.    Parties to Be Dismissed

Defendants BANA and Countrywide moved to dismiss the First Amended Complaint under Fed. R. Civ. P. 12(b)(5) and 12(b)(6) because Plaintiff failed to serve BANA and because BANA and Countrywide were not involved in the 2013 foreclosure process that is the subject of this lawsuit. (Doc. 60.) In response, Plaintiff stated she does not object to dismissing BANA from the complaint and responded to the BANA/Countrywide motion only as it pertains to Countrywide. (Doc. 72.) Therefore, all claims in this action against BANA will be dismissed with prejudice.

The First Amended Complaint does not allege that Countrywide, MERS, or Fannie Mae claim an interest in the Note and/or Deed of Trust or that any of them directly caused to be recorded any false documents clouding title to Plaintiff's property— only that they may have played a role in a chain of events resulting in commencement of trustee sale proceedings. In fact, it alleges almost no facts regarding allegedly wrongful actions by these Defendants. Plaintiff contends that Countrywide and Fannie Mae may hold an interest in the Note and/or Deed of Trust and Countrywide may possess relevant documents or information, but does not allege any cause of action under which Countrywide, MERS, or Fannie Mae would be liable to Plaintiff. The Complaint's deficiencies regarding Countrywide, MERS, and Fannie Mae cannot be cured with additional factual allegations that are consistent with and do not contradict allegations in the challenged pleading. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Therefore, all claims in this action against Defendants Countrywide, MERS, and Fannie Mae will be dismissed with prejudice.

IT IS THEREFORE ORDERED that the Motion to Dismiss First Amended Complaint by Defendants Countrywide Home Loans, Inc., and Bank of America, N.A. (Doc. 60) is granted.

IT IS FURTHER ORDERED that Green Tree, Fannie Mae, and MERS' Motion to Dismiss First Amended Complaint (Doc. 53) is denied as to Plaintiff's claims for declaratory judgment and to clear title under A.R.S. § 33-420 against Defendant Green Tree Servicing LLC.

IT IS FURTHER ORDERED that Green Tree, Fannie Mae, and MERS' Motion to Dismiss First Amended Complaint (Doc. 53), joined by Defendants Countrywide Home Loans, Inc., and Bank of America, N.A., is granted in part, as follows:

1. All claims in this action against Defendants Countrywide Home Loans, Inc., Bank of America, N.A., Federal National Mortgage Association, and Mortgage Electronic Registration Systems, Inc., are dismissed with prejudice.

2. Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing against Defendant Green Tree Servicing LLC are dismissed with prejudice.

3. Plaintiff's claim for negligence per se against Defendant Green Tree Servicing LLC is dismissed with leave to amend.

IT IS FURTHER ORDERED that Plaintiff may file a further amended complaint **by June 18, 2015**. If Plaintiff does not file a further amended complaint by June 18, 2015, the time for Defendant Green Tree Servicing LLC to file a responsive pleading will begin to run the next business day.

Dated this 3rd day of June, 2015.

_____
Neil V. Wake
United States District Judge