**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Judith D. Erickson, an unmarried woman, and as Trustee of The Erickson Family Trust,

              Plaintiff,

v.

Ditech Financial, LLC, a Delaware limited liability company, f/k/a Green Tree Servicing, LLC, a Delaware Limited Liability Company; Federal National Mortgage Association, a District of Columbia corporation; John and Jane Does 1-1000; XYZ Corporations 1-1000; ABC Limited Liability Companies 1-1000; and 123 Banking Associations 1-1000,

              Defendants.

Ditech Financial, LLC, a Delaware limited liability company,

              Counterclaimant,

v.

Judith D. Erickson, an individual; Judith D. Erickson, as trustee of the Erickson Family Trust,

              Counterdefendants.

No. CV-14-08089-PCT-NVW

**ORDER**

1  Ditech Financial, LLC, a Delaware limited
2  liability company,

3                          Third-Party Plaintiff,

4  v.

5  Holua, LLC, an Arizona limited liability
6  company; John Darreld Erickson, an
7  individual; Mortgage Electronic Registration
   Systems, Inc., a foreign corporation; The
8  Bank of New York Mellon f/k/a The Bank of
9  New York as successor Indenture trustee to
   JPMorgan Chase Bank, National Association
10 for CWHEQ Revolving Home Equity Loan
   Trust, Series 2006-I; and ROES I through X,
11 Inclusive,

12                          Third-Party Defendants.
13

14         Before the Court are the Motion for Summary Judgment by the Federal National

15 Mortgage Association ("Fannie Mae") and Ditech Financial LLC ("Ditech")[1] (Doc. 211)

16 and the Cross-Motion for Summary Judgment on Plaintiff's Claims and Counterclaim for

17 Judicial Foreclosure by Plaintiff/Counterdefendant Judith D. Erickson ("Erickson") (Doc.

18 220).

19 **I.     OVERVIEW**

20         In June 2006, Erickson borrowed $338,000 from a bank.  The home loan was

21 memorialized by a promissory note and secured by a trust deed.  Erickson quit making

22 loan payments in 2013.

23         In November 2006, Fannie Mae acquired ownership of Erickson's loan and

24 obtained possession of the promissory note, which is indorsed in blank.  Under Arizona

25 law, the transfer of a promissory note secured by a trust deed operates as a transfer of the

26

27         [1] Ditech was formerly known as Green Tree Servicing LLC.  Although referred to
28 as Green Tree in previous orders, here it is referred to as Ditech.

trust deed. A.R.S. § 33-817. Fannie Mae continues to be the owner of Erickson's loan, but has transferred possession of the note to Ditech.

Fannie Mae manages its loans through Ditech and other loan servicers, which interact with borrowers on Fannie Mae's behalf. Fannie Mae's servicing guide states that whenever a servicer represents Fannie Mae's interests in a foreclosure action, the servicer automatically has constructive, temporary possession of the mortgage note. Ditech began non-judicial foreclosure proceedings against Erickson in 2013. Ditech received physical possession of the note in April 2015. In May 2015, Ditech canceled the scheduled trustee's sale, and it now seeks judicial foreclosure.

A "person entitled to enforce" a promissory note includes not only a holder of the note, but also a nonholder in possession of the note who has the rights of a holder. A.R.S. § 47-3301. A person may be a "person entitled to enforce" a promissory note even though the person is not the owner. *Id.* Thus, Ditech is a "person entitled to enforce" Erickson's note through foreclosure either as a holder or a nonholder in possession of the note who has the rights of a holder.

In addition to challenging Ditech's entitlement to judicial foreclosure, Erickson seeks damages against Ditech under state law claims for signing and recording documents in preparation for a trustee's sale. Erickson contends that the assignment of her trust deed to Ditech was invalid, consequently Ditech lacked authority to substitute the trustee for the trust deed, and therefore the substituted trustee lacked authority to record notice of the trustee's sale. However, Erickson has failed to prove any of the documents were groundless or contained material misstatements. Erickson also contends that Ditech misrepresented Fannie Mae's interest in her loan by asserting that Ditech was the creditor and by failing to disclose an unrecorded assignment of the trust deed from Ditech to Fannie Mae executed before the scheduled trustee's sale. She has failed to show any material misstatements regarding Fannie Mae's interest in her loan.

Two groups of issues are presented by the pending motions: (1) Is Ditech entitled to judicial foreclosure or is Erickson entitled to declaratory judgment that Ditech is not entitled to either judicial or non-judicial foreclosure? (2) Is Erickson entitled to damages for any statutory violations by Ditech?

## II. LEGAL STANDARD

Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must produce evidence and show there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 6(c)(3). But it is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

The evidence presented by the parties must be admissible. LRCiv 56.1(a), (b); *see* Fed. R. Civ. P. 56(e). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If a party fails to properly support an assertion of fact or fails to properly address another party's

assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. 56(e)(2).

## III.    MATERIAL FACTS

### A.    Evidentiary Objections

Erickson and Third-Party Defendant John Darreld Erickson[2] (collectively "the Ericksons") dispute certain paragraphs of Defendants' statement of facts "to the extent of any reliance on the Payment History attached as Exhibit G."  (Doc. 217 at 4, ¶¶ 10, 11.) The Ericksons assert, "Exhibit G is not admissible through deposition testimony attached, or any Declaration or Affidavit attached.  Its content is inadmissible."  (*Id.*)  They also dispute paragraphs 17 through 26 "only to the extent of any reliance on Exhibit G, which is inadmissible."  (*Id.* at 6.)  In other words, they *object* to the admissibility of Exhibit G, but do not *dispute* the content of ¶¶ 10, 11, and 17–26 of Defendants' statement of facts. Nor do the Ericksons refer to a specific admissible portion of the record as the Local Rules require if a fact is disputed.  *See* LRCiv 56.1(b).

Moreover, the Affidavit of Jennifer Rasmussen states the basis for her personal knowledge of Ditech's business records and declares under penalty of perjury that Exhibit G is a true and correct copy of Erickson's payment history with Ditech.  (Doc. 208-4.)  Therefore, the Ericksons' objection to the admissibility of Defendants' Exhibit G is overruled.

---

[2] The Counterclaim and Third-Party Complaint of Ditech Financial LLC alleges, "At all times relevant to this counterclaim and third-party complaint, third-party defendant John Darreld Erickson was an Arizona resident claiming an interest in the Subject Property by way of a beneficiary deed recorded on April 20, 2005 in the official records of the Yavapai County Recorder.  (Doc. 149 at 18, ¶ 7.)  Both John Darreld Erickson's Answer to Third-Party Complaint and Judith Erickson's Amended Answer to Counterclaim admit the allegation.  (Docs. 193 at 3, ¶ 7; 191-1 at 4, ¶ 7.)  The briefing on the pending motions does not include any additional information regarding John Darreld Erickson.  John Darreld Erickson is a party to this lawsuit only as a third-party defendant. He has pled no claims.  He did not move for summary judgment on any claims, notwithstanding assertions in the Reply (Doc. 224) that "the Ericksons" are entitled to judgment on "their" claims.

The parties' remaining evidentiary objections, which primarily assert lack of relevance, are overruled.

**B.    The Note**

On June 24, 2006, Erickson signed a Fixed/Adjustable Rate Note ("Note")[3] that memorialized her debt in the principal amount of $338,000.00 to the Lender, Countrywide Home Loans, Inc. ("Countrywide") for the real property at 2655 Skyview Way, Sedona, Arizona ("Property").    David A. Spector, Managing Director of Countrywide, indorsed the original Note in blank.[4]

By signing the Note, Erickson agreed that the Lender may transfer the Note.  The Note further states:  "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"[5]

Under the terms of the Note, Erickson promised to make monthly payments on the first day of each month beginning on August 1, 2006, until she had paid the principal, interest, and any other charges that she owed under the Note.  The Note also states:

> "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. . . .  If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount."

---

[3] The Note established an initial fixed interest rate to be changed to an adjustable interest rate on July 1, 2011.

[4] Ditech's counterclaim alleged, "The Note is endorsed in blank by the originator of the Loan, Countrywide."  (Doc. 149, ¶ 15.)  Erickson's answer stated, "Answering the allegations in Paragraph 15, Erickson is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies the same."  (Doc. 191-1, ¶ 15.)  John Erickson's answer was the same as Erickson's.  (Doc. 193, ¶ 15.)

[5] Erickson repeatedly misstates the language of the Note.  The Note does not say the Note Holder must be "entitled to payments" or "entitled to keep payments."  It states, "Lender or anyone who takes this Note by transfer and who is **entitled to receive payments** under this Note is called the 'Note Holder.'"  That language defines the term "Note Holder" as used in the Note.

- 6 -

The Note states that in addition to the protections given to the Note Holder under the Note, a Deed of Trust, dated the same day as the Note, protects the Note Holder if the borrower does not keep the promises made in the Note.

### C. The Deed of Trust

On June 24, 2006, Erickson signed the Deed of Trust as security for the amounts due under the Note to Countrywide. The Deed of Trust granted a security interest in certain real property identified in the Deed of Trust as Parcel ID Number 408-22-070 with the common address of 2655 Skyview Way, Sedona, Arizona 86336-3119 and legally described in the Deed of Trust as:

> Lot 29, HARMONY HIGH PARK, according to the amended plat of record in Book 16 of Maps, Page 92, records of Yavapai County, Arizona.

The Deed of Trust was recorded on July 6, 2006, in the official records of the Yavapai County Recorder.

The Deed of Trust identified the Borrower as "Judith Erickson, a single woman" and the Lender as Countrywide. It identified Fidelity National Title Insurance Co. as the Trustee. Referring to Mortgage Electronic Registration Systems, Inc. ("MERS"), it stated in bold, "MERS is the beneficiary under this Security Instrument." It also stated:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale the following described property. . . .

MERS is a company that operates an electronic tracking system for mortgage rights. By naming MERS as the mortgagee in a nominee capacity on a mortgage that is recorded in the public land records, lenders that are members of the MERS System can protect their property liens without recording mortgage assignments among members in the public land records. MERS keeps track of the assignments and assigns the mortgage to the current assignee only when it becomes necessary.

### D. The Relationship Between Fannie Mae and Ditech

On November 1, 2006, Fannie Mae acquired ownership of Erickson's loan. Fannie Mae is a United States government-sponsored enterprise that is publicly traded. Among other things, it acquires and bundles residential mortgages, which are used to back securities that are sold to investors. It enters into agreements with loan servicers to collect payments from borrowers.

Ditech, formerly known as Green Tree Servicing LLC, services Erickson's loan under an agreement with Fannie Mae. Fannie Mae's Designated Document Custodian ("DDC") is the Bank of New York Mellon.

The Fannie Mae Single Family Servicing Guide (March 14, 2012) included the following provisions, which are dated May 23, 2008:

> Fannie Mae is at all times the owner of the mortgage note, whether the mortgage loan is in Fannie Mae's portfolio or part of the MBS pool. In addition, Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below. Fannie Mae may have direct possession of the note or a custodian may have custody of the note. If Fannie Mae possesses the note through a document custodian, the document custodian has custody of the note for Fannie Mae's exclusive use and benefit.

> In order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions, bankruptcy cases, probate proceedings, or other legal proceedings. This temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of Fannie Mae's interests in the foreclosure, bankruptcy, probate, or other legal proceeding.

> When Fannie Mae transfers possession, the servicer becomes the holder of the note as follows:

> • If a note is held at Fannie Mae's DDC, Fannie Mae has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit.

- If the note is held by a document custodian on Fannie Mae's behalf, the custodian also has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit. In most cases, a servicer will have a copy of the mortgage note. If a servicer determines that it needs physical possession of the original mortgage note to represent the interests of Fannie Mae in a foreclosure, bankruptcy, probate, or other legal proceeding, the servicer may obtain physical possession of the original mortgage note by submitting a request directly to the document custodian.

These provisions were retained with minor revisions in the January 15, 2015 Fannie Mae Servicing Guide.

On April 6, 2015, Ditech requested from the Bank of New York Mellon physical transfer of the Note to Ditech pursuant to the Fannie Mae Servicing Guide. On April 30, 2015, Ditech received physical possession of the Note. On April 30, 2015, Ditech physically transferred the Note to its defense counsel as Ditech's bailee.

**E.     The Default and Non-Judicial Foreclosure Proceedings**

On February 18, 2013, after Erickson had failed to make timely payments for January and February, Ditech mailed to Erickson a Notice of Default and Right to Cure Default. On March 8, 2013, a Corporate Assignment of Deed of Trust was signed by Ashley Braband as Assistant Secretary for MERS. The Assignment states that MERS, as nominee for Countrywide, its successors and assigns (*i.e.*, Bank of America), assigns the Deed of Trust to Ditech. The Corporate Assignment of Deed of Trust was recorded on March 11, 2013.

On March 15, 2013, Erickson made a payment to cover the amounts due for January, February, and March 2013. On May 13, 2013, Ditech mailed Erickson a new Notice of Default and Right to Cure Default. It stated that if Erickson did not cure her default within thirty days from the date of the notice by sending the total amount of $3,307.58 or by completing a modification or repayment agreement, "the maturity of this

loan is accelerated and full payment of all amounts due under the loan agreement is required without further notice from us."

On May 31, 2013, Erickson paid the amount due for April 2013. On June 29, 2013, Erickson paid the amount due for May 2013. On July 24, 2013, Erickson paid the amount due for June 2013. On August 21, 2013, Erickson paid the amount due for July 2013. On September 13, 2013, Erickson paid the amount due for August 2013. On September 30, 2013, Erickson attempted to make a telephonic payment for payments due September 1, 2013, and October 1, 2013, but that payment was rejected for insufficient funds. Erickson has made no payments since September 13, 2013.

On November 18, 2013, Ditech referred Erickson's loan to its foreclosure counsel, Jason Sherman. Erickson received a letter dated November 22, 2013, notifying her that Ditech had referred her loan to a law firm for foreclosure. She also received a notice that as of November 18, 2013, the amount of her debt was $302,753.25, and the creditor to whom the debt was owed was Ditech. The notice also stated that the Fair Debt Collection Practices Act entitled Erickson to dispute the debt within thirty days.

On December 3, 2013, Ditech substituted Sherman as the Trustee for the Deed of Trust. On February 7, 2014, Sherman recorded the Notice of Substitution of Trustee and the Notice of Trustee's Sale. The Notice of Trustee's Sale identified Ditech as the Beneficiary and Sherman as the Trustee of the Deed of Trust. It announced that the Property would be sold pursuant to the power of sale under the Deed of Trust at public auction on May 9, 2014.

Also on February 7, 2014, Sherman sent to Erickson a Statement of Breach, Notice of Default, and Election to Sell Under Deed of Trust. It stated that Erickson had failed to make the payment due under the terms of the Note on September 1, 2013, and all subsequent payments and that the current Beneficiary of the Deed of Trust "hereby requires immediate payment in full of all sums secured by the Deed of Trust and further elects to sell the subject real property" at a trustee's sale. It stated that the unpaid

principal balance due on the Note was $296,659.03. It identified Ditech as the Beneficiary.

On April 30, 2014, in preparation for the Trustee's Sale scheduled for May 9, 2014, a Ditech representative signed an Assignment of Deed of Trust, to transfer the Deed of Trust to Fannie Mae and to be recorded in the event that Fannie Mae purchased the Property at the Trustee's Sale. This assignment was not recorded.

On May 19, 2015, during a court hearing, Ditech's counsel stated that at the time the notice of default was sent to Erickson and the Notice of Trustee's Sale was recorded, Ditech had possession of the Note. He explained that the Note came to Ditech along with the servicing rights, and he did not know the exact date that happened. Ditech's counsel further stated that he did not know the date that Ditech received physical possession of the Note or whether Ditech received the Note from Fannie Mae or directly from Bank of America. He said that he had the Note physically in his possession in court. He also asserted that either Ditech was entitled to payments on the Note or accepted payments on behalf of Fannie Mae.

On May 29, 2015, Ditech canceled the Trustee's Sale. On June 1, 2015, Sherman recorded a Cancellation of Notice of Trustee's Sale. On October 30, 2015, Ditech produced to Erickson the unrecorded Assignment of Deed of Trust signed on April 30, 2014, with other documents in Sherman's records.

## IV. THE PARTIES' CLAIMS

Erickson's Third Amended Complaint (Doc. 142) alleges four claims for relief. Count One seeks declaratory judgment that: (1) Ditech, Fannie Mae, or any other person or entity must prove its status as Note Holder/Lender before it may proceed to foreclosure; (2) the Assignments, Substitution, Notice of Trustee's Sale, and Statement of Breach are void and unenforceable, and the recorded documents must be cancelled; (3) the Note and Deed of Trust require that only the Note Holder/Lender may enforce the terms of the Note, accelerate the balance, and initiate foreclosure (non-judicial or judicial) of the Deed of Trust; and (4) neither Ditech nor Fannie Mae is the Note

Holder/Lender and true beneficiary, the Deed of Trust has been rendered a nullity, and no one may seek to enforce the Note until an entity can prove its status as Note Holder/Lender.

Erickson's Count Two alleges violation of A.R.S. § 33-420 by the recording of the First Assignment, Substitution of Trustee, and Notice of Trustee's Sale. Count Two does not identify from whom Plaintiff seeks damages. Erickson's Count Three alleges negligence per se against Ditech for statutory violations and misrepresentations. Count Four alleges Ditech and Fannie Mae violated the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq.

Ditech's counterclaim and third-party complaint seeks judicial foreclosure of the Deed of Trust under A.R.S. § 33-807(B). On June 9, 2016, default was entered against Third-Party Defendant Holua LLC. On July 5, 2016, Third-Party Defendants Mortgage Electronic Registration Systems, Inc., and Bank of New York Mellon were dismissed upon stipulation.

## V.    ANALYSIS

### A.    Prior Rulings

In their briefing on the pending motions, the parties assert that the Court has previously decided certain issues that it has not. To cure any misunderstanding, relevant portions of prior orders are summarized here.

On June 4, 2015, the Court dismissed portions of Erickson's First Amended Complaint, assuming Erickson's allegations of material fact to be true and construing them in the light most favorable to Erickson. (Doc. 90.) The June 4, 2015 Order discussed requirements for non-judicial foreclosure under the Arizona Deed of Trust Act. It quoted A.R.S. § 33-801(1), which states: "'Beneficiary' means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest." The Order stated that under Arizona law, "Transfer of a debt evidenced by a promissory note and secured by a trust deed transfers beneficial interest in the trust deed by operation of law." (Doc. 90 at 8.)

The June 4, 2015 Order also explored three theories to determine whether Erickson had a good faith basis to dispute Ditech's authority to conduct a trustee's sale. It expressly did not decide any issues with finality. The Order stated:

> During the recent recession, many Arizona homeowners fell behind on their mortgage obligations and sought to avoid losing their homes in trustee's sales by filing state court actions. Many of those lawsuits were removed to the federal court. As a result, some of the legal issues presented in this case, although common, have not been decided by the Arizona state courts. At the pleading stage, those issues are not decided here with finality. It is necessary only to determine whether, assuming Plaintiff's factual allegations to be true and construing them in the light most favorable to Plaintiff, Plaintiff "possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale."

(*Id.* at 10.) Assuming Erickson's factual allegations to be true, the Court reasoned that it was unlikely that Ditech received authority to conduct a trustee's sale by assignment from MERS or as an agent of MERS, but it was possible that Ditech had authority to conduct a trustee's sale after the Note, which was secured by the Deed of Trust, was transferred to Ditech. (*Id.* at 12.) The Order stated:

> Under Arizona law, the transfer of a contract secured by a trust deed operates as a transfer of the trust deed. A.R.S. § 33-817. If Countrywide transferred the Note, secured by the Deed of Trust, to [Ditech], then the Deed of Trust transferred by operation of law to [Ditech]. Under this theory, [Ditech] would have been the beneficiary of the Deed of Trust as defined by the Arizona Deed of Trust statutes and authorized to issue the notice of default and the notice of substitution of trustee while it was the holder of the Note. Identifying [Ditech] as the creditor and beneficiary in the Notice of Default and Right to Cure Default, Notice of Substitution of Trustee, Notice of Trustee's Sale, and Statement of Breach then would have been accurate.
>
> However, this theory works only if Countrywide transferred the Note to [Ditech], its loan servicer, before [Ditech] issued the notices.

(*Id.*)

On July 29, 2016, the Court denied Erickson's motion to dismiss Ditech's counterclaim for judicial foreclosure, assuming Ditech's allegations of material fact to be true and construing them in the light most favorable to Ditech:

Under the Arizona Deed of Trust Act, a trustee or beneficiary may file and maintain an action for judicial foreclosure at any time before the trust property has been sold under the power of sale. A.R.S. § 33-807(B); *see* A.R.S. § 33-721 (foreclosure of mortgage by court action).

Ditech alleges that it is both the Note Holder and the Deed of Trust Beneficiary. "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." A.R.S. § 47-3201(A). "If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." A.R.S. § 47-3201(B). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." A.R.S. § 47-3205(B). "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." A.R.S. § 47-3203(B).

As alleged, the Note was endorsed in blank by Countrywide, and both constructive and physical possession of the Note was transferred to Ditech. Thus, Ditech became the Note Holder. As the Note Holder, Ditech is a "person entitled to enforce" the Note:

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 47-3309 or § 47-3418, subsection D. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

A.R.S. § 47-3301. Therefore, Ditech has any right to enforce the Note that Countrywide held.

As alleged, Ditech is also the Beneficiary under the Deed of Trust because the transfer of a contract secured by a trust deed operates as a transfer of the trust deed. A.R.S. § 33-817. A mortgage is a "mere incident" to the debt it secures:

> The law seems to be well settled that the mortgage is a mere incident to the debt and that its transfer or assignment does not transfer or assign the debt or the note. The mortgage goes with the note. If the latter is transferred or assigned, the

> mortgage automatically goes along with the assignment or
> transfer. . . . The mortgage, being a mere incident of the
> debt, cannot be assigned separately from it, so as to give any
> beneficial interest. . . . A mortgage, as distinct from the debt
> it secures, is not a thing of value nor a fit subject of transfer;
> hence an assignment of the mortgage alone, without the debt,
> is nugatory, and confers no rights whatever upon the assignee.
> . . . An assignment of the note carries the mortgage with it,
> while the assignment of the latter alone is a nullity.

> *Hill v. Favour*, 52 Ariz. 561, 568, 84 P.2d 575, 578 (1938); *accord Rodney
> v. Arizona Bank*, 172 Ariz. 221, 223, 836 P.2d 434, 436 (Ct. App. 1992).
> Thus, transfer of the Note from Countrywide to Ditech operated as a
> transfer of the Deed of Trust.

(Doc. 189 at 4–5.)

**B.    Enforcement of the Note**

A promissory note is a contract that evidences a loan and the borrower's duty to repay the loan. *Hogan v. Washington Mut. Bank, N.A.*, 230 Ariz. 584, 587, 277 P.3d 781, 784 (2012); *see* A.R.S. § 33-801(4). A deed of trust is evidence that a property is held in trust to serve as collateral to secure repayment of the money owed under the note. *Id.*; *see* A.R.S. §§ 33-801(4), -801(8), -801(9), -805, -807(A).

The Note is a negotiable instrument under the Arizona Uniform Commercial Code. *See* A.R.S. § 47-3104(A); *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 420 (Ct. App. 1991). Erickson's debt arises from the Note; foreclosure is a means of collecting the debt under the Note. *See Nat'l Bank of Arizona v. Schwartz*, 230 Ariz. 310, 312, 283 P.3d 41, 43 (Ct. App. 2012.)

When Erickson signed the Note as its maker, she incurred the obligation to make payment under the terms of the Note to a "person entitled to enforce" the Note. *See* A.R.S. § 47-3412.

> "Person entitled to enforce" an instrument means the holder of the
> instrument, a nonholder in possession of the instrument who has the rights
> of a holder or a person not in possession of the instrument who is entitled to
> enforce the instrument pursuant to § 47-3309 or § 47-3418, subsection D.

A.R.S. § 47-3301.  A "holder" includes a "person in possession of a negotiable instrument that is payable to [] bearer."  A.R.S. § 47-1201(B)(21)(a).  "A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."  A.R.S. § 47-3301.

The rules that determine who is entitled to enforce a note "are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation."  *In re Veal*, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011).  The maker of a note does not need to know who owns a note as long as the maker knows whom to pay.  *Id.* at 912 n.27.

Here, the Note is indorsed in blank.  Although the Ericksons denied Ditech's allegation that "The Note is endorsed in blank by the originator of the Loan, Countrywide," they did so only on the basis of being without knowledge or information.

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but *the signature is presumed to be authentic and authorized* unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

A.R.S. § 47-3308(A) (emphasis added).  "Whenever this title creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed,' the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence."  A.R.S. § 47-1206.  *See Valley Bank of Nevada v. JER Mgmt. Corp.*, 149 Ariz. 415, 418–19, 719 P.2d 301, 304–05 (Ct. App. 1986) ("[T]he party claiming under the signature is not put to his proof until the party making the denial has produced 'some evidence' that would support a finding that the signature is forged or unauthorized. . . . Further, demonstrating the other party's apparent lack of evidence does not constitute producing 'evidence' of forgery or lack of authorization. . . .")

- 16 -

"When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." A.R.S. § 47-3205(B). "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." A.R.S. § 47-3201(A). "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument . . . ." A.R.S. § 47-3203(B).

The Ericksons have not produced any evidence that the indorsement on the Note is forged or unauthorized. Therefore, the indorsement is presumed to be authentic and authorized. Countrywide indorsed the Note in blank, and it was transferred to Fannie Mae. Under its agreement with Ditech, Fannie Mae purported to give Ditech constructive possession of the Note automatically when Ditech began foreclosure proceedings on Fannie Mae's behalf, and Ditech became entitled to enforce the Note in its own name for Fannie Mae's benefit. If by such agreement Fannie Mae was able to give constructive possession of a note to Ditech, then Ditech became a holder of the Note in February 2013. *See, e.g., Rodney v. Arizona Bank*, 172 Ariz. 221, 225-26, 836 P.2d 434, 438-39 (Ct. App. 1992) (holding that an entity that never had physical possession of a note took constructive possession of the note when it notified the note's bailee of its security interest in the note).

But even if there is no legal basis for finding constructive possession of a note, Fannie Mae conveyed to Ditech the rights of a holder. Under that view, Ditech became a nonholder in possession of the Note who has the rights of a holder when it received physical possession of the Note on April 30, 2015. Either way, Ditech is a "person entitled to enforce" the Note under Arizona statutes.

Erickson contends that when she and Countrywide executed the Note, they chose to "opt out of" the Arizona Uniform Commercial Code, and they agreed to a different definition of "Note Holder." *See* A.R.S. § 47-1302(A) ("[T]he effect of provisions of this

title may be varied by agreement.")  The Note states:  "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  It refers to "the protections given to the Note Holder under this Note." Erickson reasons that the definition of "Note Holder" as "anyone who takes this Note by transfer and who is entitled to receive payments" is different from a "person entitled to enforce" under the Arizona Uniform Commercial Code, *i.e.*, "the holder of the instrument" or "a nonholder in possession of the instrument who has the rights of a holder."

Even if Ditech is no more than a loan servicer, it is "entitled to receive payments." Although Erickson accurately quotes the Note as requiring the Note Holder to be one "who is entitled to receive payments," she interprets that phrase as meaning one "who is entitled to keep payments."  She contends that because Ditech is not the owner of her loan, it cannot be the Note Holder.  However, the Note does not require ownership for one to be entitled to receive payments.  Therefore, because Ditech holds the Note and is entitled to receive payments, it is the Note Holder under both the express terms of the Note and the Arizona Uniform Commercial Code, and it is a person entitled to enforce the Note.[6]

### C.    Ditech's Counterclaim for Judicial Foreclosure

#### 1.    Foreclosure Under Arizona Law

Instead of seeking enforcement of the Note, Ditech seeks to judicially foreclose the Deed of Trust.  Where a loan is secured by a trust deed, the trustee or beneficiary may file and maintain an action for judicial foreclosure of a trust deed in the same manner as for a mortgage that is not a trust deed:

---

[6] Erickson also asserts that Ditech admitted that "Fannie Mae is not the Note Holder/Lender" in its Answer to the Second Amended Complaint filed September 17, 2015 (Doc. 98, ¶ 27).  The "Lender" as defined in the Note is Countrywide.  By September 17, 2015, Ditech had physical possession of the Note.  Therefore, Fannie Mae was not the Note Holder or the Lender.

> At the option of the beneficiary, a trust deed may be foreclosed in the manner provided by law for the foreclosure of mortgages on real property in which event [A.R.S. §§ 33-701 et seq.] governs the proceedings. The beneficiary or trustee shall constitute the proper and complete party plaintiff in any action to foreclose a deed of trust.

A.R.S. § 33-807(A). "The trustee or beneficiary may file and maintain an action to foreclose a deed of trust at any time before the trust property has been sold under the power of sale." A.R.S. § 33-807(B); *see also* A.R.S. § 33-814(E) (a beneficiary may foreclose a deed of trust in the same manner as a real property mortgage).

"Mortgages of real property and deeds of trust of a type not included in the definition of deed of trust provided in § 33-801, notwithstanding any other provision in the mortgage or deed, shall be foreclosed by action in a court." A.R.S. § 33-721. "When a mortgage or deed of trust is foreclosed, the court shall give judgment for the entire amount determined due, and shall direct the mortgaged property, or as much thereof as is necessary to satisfy the judgment, to be sold." A.R.S. § 33-725(A).

### 2. Ditech Is Entitled to Judicial Foreclosure

As concluded above, Ditech is entitled to enforce the Note secured by the Deed of Trust. Further, transfer of the Note secured by the Deed of Trust operates as a transfer of the beneficial interest in the Deed of Trust. *See* A.R.S. §§ 33-817, 33-801(1). Thus, when Fannie Mae transferred the Note to Ditech, it also transferred its beneficial interest in the Deed of Trust, and Ditech became the Beneficiary of the Deed of Trust. As Beneficiary, Ditech is entitled to judicially foreclose the Deed of Trust.

As of February 7, 2014, Erickson owed $296,659.03 on the Note, plus interest, fees, costs, and other charges. Before entering judgment, the Court will consider evidence from the parties regarding the entire amount currently due. Upon giving judgment for the entire amount due, the Court will "direct the mortgaged property, or as much thereof as is necessary to satisfy the judgment, to be sold." A.R.S. § 33-725(A).

**D. Erickson's Claim for Declaratory Judgment**

Erickson's cross-motion for summary judgment seeks declaratory judgment that neither Ditech nor Fannie Mae is entitled to enforce the Note or Deed of Trust now or in the future. As concluded above, Ditech is entitled to enforce the Note and the Deed of Trust. Therefore, Erickson will be denied declaratory judgment.

**E. Erickson's Claim Under A.R.S. § 33-420 for Recording False Documents**

Under A.R.S. § 33-420(A),

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

A misstatement is material if a reasonable person would attach importance to its existence or nonexistence in deciding his or her choice of action. *Stauffer v. Premier Serv. Mortg., LLC*, 240 Ariz. 575, 578, 382 P.3d 790, 793 (Ct. App. 2016), *review denied* (Nov. 15, 2016); *Sitton v. Deutsche Bank Nat. Trust Co.*, 233 Ariz. 215, 221–22, 311 P.3d 237, 242–43 (Ct. App. 2013). In both *Stauffer* and *Sitton*, misstatements in recorded documents reciting assignment dates and identities of assignors were deemed not material to borrowers because the documents did not affect the borrowers' legal obligations or possible available actions. Their options continued to be: (1) repay the loan according to the terms of the note, (2) try to renegotiate the terms of the note, or (3) default and accept foreclosure. *Id.*

The Corporate Assignment of Deed of Trust, dated March 8, 2013, and recorded on March 11, 2013, states that Countrywide assigned the Deed of Trust to Ditech. Erickson contends the document is groundless because Ashley Braband signed it claiming to be an Assistant Secretary for MERS "as nominee for Countrywide Home Loans, Inc., its successors and assigns." By signing the Deed of Trust, Erickson agreed

to identify MERS as the Beneficiary as the nominee for Countrywide and its successors and assigns. As of February 13, 2013, Braband was a Signing Officer of Nationwide Title Clearing, Inc., and authorized on behalf of and in the name of MERS to assign the lien of any mortgage loan registered to Ditech or its designee. MERS records show that on March 11, 2013, Erickson's mortgage was assigned from MERS to Ditech for default or bankruptcy. The assignment of the Deed of Trust from MERS to Ditech did not affect Erickson's obligations or possible available actions under either the Deed of Trust or the Note. A reasonable person would not attach importance to who signed the Corporate Assignment of Deed of Trust in deciding whether to (1) repay the loan according to the terms of the note, (2) try to renegotiate the terms of the note, or (3) default and accept foreclosure.

The Notice of Substitution of Trustee was executed on December 3, 2013, and recorded on February 7, 2014. It identifies Ditech as the Beneficiary of the Deed of Trust and states that Ditech has appointed Jason Sherman as the Successor Trustee. Erickson contends the document is invalid because the Deed of Trust was not legally assigned to Ditech and Ditech is not the Lender secured by the Deed of Trust. As discussed above, Fannie Mae acquired possession of the Note indorsed in blank that secured the Deed of Trust and authorized Ditech to act on Fannie Mae's behalf. As a matter of law, the Deed of Trust transferred with the Note to Ditech even if, as Erickson contends, the assignment from MERS to Ditech was invalid. Thus, Ditech's appointment of Sherman as the Successor Trustee was not false or groundless. Further, whether the Notice of Substitution of Trustee identified Ditech or Fannie Mae as the Beneficiary was immaterial.

The Notice of Trustee's Sale was recorded on February 7, 2014. It identifies Ditech as the Beneficiary of the Deed of Trust and Sherman as the Trustee. Erickson contends the document is invalid because Sherman was not substituted legally and not authorized to sign and record the Notice of Trustee's Sale—contentions that the Court

has determined to be incorrect. Even if these documents did misrepresent the true beneficiary of the Deed of Trust, Erickson offers no basis for concluding the misrepresentation is material now or that it was material before Ditech canceled the Trustee's Sale. A reasonable person would not attach importance to whether Ditech was the true beneficiary or acting on behalf of the true beneficiary. At all relevant times, Erickson knew she had three options, *i.e.*, repay the loan, renegotiate the terms, or default and accept foreclosure. At all times, she knew that she was obligated to make payments to Ditech.

Erickson also contends the Notice of Trustee's Sale is groundless because "Sherman never received, in writing, the Lender's declaration of default and election to foreclose prior to initiating the sale," as required by the Deed of Trust, but instead Ditech told Sherman to initiate foreclosure. (Doc. 219 at 18.) The Deed of Trust identifies the Lender as Countrywide and states that the Note states that Borrower owes Lender $338,000 plus interest. The Note expressly states, "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" When Ditech directed Sherman to initiate foreclosure, Ditech was a person entitled to enforce the Note, the Note Holder under the terms of the Note, and Lender's successor under the Deed of Trust. Thus, Ditech was the proper entity to direct Sherman to initiate foreclosure, and the Notice of Trustee's Sale is not groundless. Moreover, the Trustee's Sale was canceled, and Erickson has not produced evidence that the Notice of Trustee's Sale affected her legal obligations or possible actions.

Therefore, Ditech is entitled to summary judgment in its favor on Erickson's claim under A.R.S. § 33-420.

**F.    Erickson's Claim for Negligence Per Se**

"A person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." *Good v. City of Glendale*, 150 Ariz. 218, 221, 722 P.2d 386, 389 (Ct. App. 1986); *accord Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125, 139, 318 P.3d 419, 433 (Ct. App. 2014).

Erickson contends that Ditech is liable for negligence per se because it violated A.R.S. §§ 33-420 and 39-161. As found above, Ditech did not violate § 33-420. A.R.S. § 39-161 states:

> A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony.

The Corporate Assignment of Deed of Trust, Notice of Substitution of Trustee, and Notice of Trustee's Sale were not false or forged. Erickson offers no additional evidence to show that Ditech violated § 39-161.

Therefore, Ditech is entitled to summary judgment in its favor on Erickson's claim of negligence per se.

### G. Erickson's Claim for Violation of Arizona Consumer Fraud Act

Under the Arizona Consumer Fraud Act,

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A). "Merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate or services." A.R.S. § 44-1521(5). "'Sale' means any sale, offer for sale or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. § 44-1521(7). Private actions under the Act are subject to a one-year limitations period, which begins to run when the consumer knows or should have known the "who" and "what" of her claim. A.R.S. § 12-541(5); *Murry v. W. Am. Mortg. Co.*, 124 Ariz. 387, 390, 604 P.2d 651, 654 (Ct. App. 1979); *Lawhon v. L.B.J. Institutional Supply, Inc.*, 159 Ariz. 179, 183, 765 P.2d 1003, 1007 (Ct. App. 1988).

"The elements of a private cause of action under the [A]ct are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 342, 666 P.2d 83, 87 (Ct. App.1983); *accord Castle v. Barrett-Jackson Auction Co., LLC*, 229 Ariz. 471, 473, 276 P.3d 540, 542 (Ct. App. 2012).

Count Four of the Third Amended Complaint alleges that Ditech and Fannie Mae violated A.R.S. § 44-1521 et seq. by:

> (1) allowing documents to be signed by individuals without legal authority, allowing those groundless and false documents containing material misrepresentations to be recorded at the Yavapai County Recorder's Office, and initiating the trustee's sales pursuant to void documents, in violation of Arizona law; (2) proceeding under the First Assignment, filing pleadings in December of 2014 and representing to the Court on May 19, 2015, that [] Ditech was the legal beneficiary under the Deed of Trust, knowing that [] Ditech had assigned any interest it had in the Deed of Trust and 'any money thereon' to Fannie Mae on April 30, 2014 and its representations were false.

(Doc. 143-1 at 30-31, ¶ 144.) Erickson apparently concedes that any claim of consumer fraud arising from recording allegedly "groundless and false documents containing material misrepresentations" and "initiating the trustee's sales pursuant to void documents" is barred by the one-year statute of limitations. Further, she has not proven that any of the recorded documents were groundless, false, or void or contained any material misrepresentations.

Instead, in her briefs, Erickson contends that (1) Ditech misrepresented that Fannie Mae had no interest in the Erickson Loan, in briefing its motion to dismiss and in oral argument on May 9, 2015 (which, she asserts, likely caused the Court to dismiss Fannie Mae) and (2) Ditech failed to disclose the unrecorded April 20, 2014 Assignment of Deed of Trust. Erickson did not learn of it until October 30, 2015, and she pled consumer fraud on March 31, 2016. Neither set of circumstances constitutes a violation of the Arizona Consumer Fraud Act.

In November 2013, pursuant to its agreement with Fannie Mae, Ditech began foreclosure proceedings as the Note Holder. Erickson was notified that her loan had been referred to a law firm for foreclosure and she owed the debt to Ditech. In April 2014, an Assignment of Deed of Trust assigning the Deed of Trust from Ditech to Fannie Mae was signed and kept in Sherman's file only to be recorded in the event that Fannie Mae purchased the Property at the Trustee's Sale scheduled for May 9, 2014. The Assignment had no effect because it was never delivered. Moreover, Erickson did not suffer any consequent and proximate injury from the undelivered, unrecorded, and undisclosed document.

Further, Ditech did not misrepresent Fannie Mae's interest in Erickson's loan. On April 17, 2015, Defendants' supplemental brief stated: "Countrywide endorsed the Note in blank, and [Ditech] has physical possession of the original endorsed Note as custodian for and as authorized by Fannie Mae. . . . Defendants do not presently know the date the Note was endorsed in blank, or when it came into [Ditech's] possession." (Doc. 86 at 16.) The brief also stated: "[Ditech] *was* a creditor in February 2013 because it had the right to collect payments from Erickson as the lender's servicing agent. Although [Ditech] did not acquire the trust deed until March 2013, the trust deed is only security for the debt, so there is no inconsistency in [Ditech] calling itself the creditor before receiving the security instrument from MERS." (*Id.* at 17.)

On May 19, 2015, during oral argument on motions to dismiss Erickson's First Amended Complaint, Ditech's counsel said that at the time the notice of default was sent and the Notice of Trustee's Sale was recorded, Ditech had possession of the Note. (Doc. 95.) It can be inferred that he meant Ditech had constructive possession of the Note because he said Ditech received the Note from Bank of America along with the servicing rights, but he did not know the exact date, nor did he know the exact date that Ditech received physical possession of the Note. Ditech's counsel said that Ditech is the holder of the Note and the Beneficiary under the Deed of Trust. Later in the hearing, Ditech's

counsel said, "[E]ither [Ditech] is entitled to those payments or [Ditech] is accepting these payments on behalf of Fannie Mae."

The statements by Ditech's counsel did not misrepresent Fannie Mae's interest in the Note or the Deed of Trust. Nor did they cause the Court to dismiss Erickson's complaint against Fannie Mae. On June 4, 2015, the Court stated that the First Amended Complaint alleged almost no facts regarding Fannie Mae and did not allege that Fannie Mae claimed an interest in the Note or the Deed of Trust. (Doc. 90.) The Court concluded that the First Amended Complaint did not allege any cause of action for which Fannie Mae would be liable to Erickson.

Therefore, Ditech is entitled to summary judgment in its favor on Erickson's claim of consumer fraud.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment by the Federal National Mortgage Association and Ditech Financial LLC (Doc. 211) is granted.

IT IS FURTHER ORDERED that the Cross-Motion for Summary Judgment on Plaintiffs' Claims and Counterclaim for Judicial Foreclosure (Doc. 220) is denied.

IT IS FURTHER ORDERED that Federal National Mortgage Association and Ditech Financial LLC file a proposed form of judgment.

Dated this 27th day of April, 2017.


_____
Neil V. Wake
Senior United States District Judge